## JEMISON *vs.* PLANT. & MER. BANK OF MOBILE.

1. The notice issued at the instance of a Bank against its debtor, after it has served the purpose of bringing him into court, may be treated as a declaration, to which the defendant may either demur or plead.

2. On the motion of a Bank for judgment against its debtor, the certificate required by statute, that the debt is *bona fide* the property of the Bank, is intended merely to give the court jurisdiction, and cannot cure a defect in the notice.

3. In summary proceedings in derogation of the common law, the record must show affirmatively and clearly every fact necessary to entitle the party to the remedy, which he claims.

4. The acts of the 13th February 1843, for the final settlement of the affairs of the Planters and Merchants Bank of Mobile, and of the 24th January 1845, amendatory thereof, are public acts, and will be judicially noticed, though not specially pleaded.

5. The acts above referred to not having reserved to the Bank the power to sue, after the forfeiture of its charter, but having vested it, first in commissioners and then in trustees, to be by them exercised in the name of the Bank, a notice in its name against one of its debtors, which fails to show that the proceeding is instituted by direction, or for the use of the trustees, is bad on demurer.

Error to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

THIS was a proceeding by notice at the instance of the dedefendant against the plaintiff in error. The notice is in the following words: "To Robert Jemison, Jr.—You will take notice that at the next term of the Circuit Court for the county of Mobile, to be held in said county, on the fourth Monday after the fourth Monday of October next, and on the third Monday of the said term, the Planters and Merchants Bank of Mobile will move for judgment and award of execution against you, as the maker of two notes of the effect following; each of the said notes is dated at Columbus, Mississippi, 5th April 1842—each of them is for four thousand, one hundred and eighty-nine dollars, and seventy five cents, with interest from the first day of January 1842—both are payable to the order of Eli Abbott, one on the first day of January 1844, and the other on the first day of January 1845, for value received—which notes have been endorsed by Eli

Abbot to the plaintiff, and are now due and the money has not been paid." Accompanying this notice is a certificate as follows: "We, Hindman Barney, David Stoddard and Henry Goldthwaite, trustees of the Planters and Merchants Bank of Mobile under the act entitled "an act to amend the laws heretofore enacted for the final settlement of the affairs of the Planters and Mer. Bn'k of Mobile," approved Jan. 24th, 1845, do hereby certify that the debt specified in the notice aforesaid is really and *bona fide* the property of said Bank. Witness our hands and the seal of said Bank, 30th September 1846." The defendant demurred to the notice, in which the plaintiff joined, but the court overruled the demurrer. The defendant thereupon pleaded four several pleas: 1st, the general issue, 2d, *nul teil* record, 3d and 4th, that the notes, endorsed by Eli Abbott for the accommodation of the defendant, were given by the defendant to the Commercial Bank of Columbus, an incorporated Bank of the State of Mississippi, located at Columbus in said State, and that said Commercial Bank on the — day of ——— transferred and delivered said notes to the plaintiff in express violation of the seventh section of an act of the legislature of the State of Mississippi, entitled an act, &c. Then follows a copy of the section referred to, making it unlawful "for any Bank in this State to transfer by endorsement or otherwise, any note, bill receivable, or other evidence of debt" and providing that "if it shall appear in evidence on the trial of any action upon any such note, bill receivable or other evidence of debt, that the same was so transferred, the same shall abate on the plea of the defendant." The pleas conclude with an averment that the said notes were so transferred after the passage of said act. The plaintiff took issue on the first, and demurred to the 2d, 3d and 4th pleas, whereupon the court sustained the demurrer to the 2d and overruled it as to the 3d and 4th pleas. The plaintiff then replied to the 3d and 4th pleas, admitting the transfer of the notes, as stated in the pleas, and averring, that "the said Commercial Bank of Columbus, at Mobile, in the county aforesaid, in good faith, and to pay a debt due to the said plaintiff by said Commercial Bank, then and there delivered said notes, so endorsed, to the said plaintiff, of all which the said defendant had notice, and that the said defendant after notice as aforesaid, at Mobile &c., did consent that the money specified in said notes should be paid to the said

plaintiff, under the order, transfer, and endorsement aforesaid."
To this replication there was a demurrer, which was overruled by
the court, thereupon the defendant put in a general rejoinder.
There was a verdict and judgment for the plaintiff, the latter of
which conforms to the notice, as to the description of the plain-
tiff. The rulings of the court are now assigned as error.

HOPKINS, for the plaintiff in error :

The trustees alone had authority to use the corporate power
as the plaintiff, and the notice is fatally defective in not showing
in some part of it, or by the signature to it of the trustees, or of
some person as the attorney of the trustees, that the trustees
brought the suit in the corporate name of the Bank. For this
defect, the demurrer to the notice ought to have been sustained.
13 Ohio Rep. 250 ; ib. 298; 8 Wend. 645.

The defect cannot be supplied by the certificate. It is no
part of the notice, and if it accompany the notice into the hands
of the sheriff, it has no effect upon the notice.—8 Porter 120.
The certificate is to give jurisdiction, and may be made after the
return of the notice and the commencement of the suit. The
parties to the suit are fixed by the notice.—6 Ala. Rep. 289-96.
The certificate cannot be used for any other purpose than to
give jurisdiction.—1 Ala. 268-70. The suit should have been
in the corporate name by the trustees, and the judgment in the
same names.—5 Porter 225, 230-1.

The pleadings in the case do not dispense with the rule of
law, which requires that the facts stated in the record, indepen-
dently of the pleadings, must show a case in which a judgment
may be lawfully rendered on motion.—8 Port. 102; 4 ib. 181-4.

Regardless of any question arising from the issues either of
law or of fact, the judgment ought to be reversed, because the
facts appearing in the record do not make a case in which the
judgment could be legally rendered.—4 Stew. & Por. 215-19 ;
13 Ohio 251-3-9, 269-70-71, 298-9; 8 Porter 102-3-5-6-7,
120-22; 6 Ala. 295; 8 Wend. 480-86; 3 Phillips' Ev. 1067,
note 723.

CAMPBELL, for the defendant :

1. The act of the Legislature of 1845 (Pamphlet Acts 46)
enables the trustees to sue in the name of the Bank, and to

make the certificates in the same manner as if the charter had not expired. In this case the facts on the certificate were made to appear to the court. This gives the court jurisdiction. The notice is not a part of the record. It is necessary that the jurisdictional facts should appear of record, independent of what is said in the notice.—8 Porter 104.

2. It appears by the entries on the record, that the trustees furnished the certificate that they were trustees, and that the debt was really and *bona fide* the property of the Bank. The whole of the facts necessary to establish the jurisdiction of the court then appear of record. The court will assume that the debt was legally acquired, in the absence of a plea to the contrary.—14 Ala. 668.

CHILTON, J.—This case has been twice argued before us. At first we were disposed to rest it upon what we conceived to be an erroneous decision of the primary court upon the sufficiency of the plaintiff's replication to the defendant's third and fourth pleas; but we have since discovered that the Supreme Court of the United States has decided the Mississippi statute, relied upon in those pleas, to be unconstitutional.—Planters Bank v. Sharp et al. 6 How. U. S. Rep. 103. The court, however, appears to have been divided in opinion, and was not full, and as we are informed that the same question will probably be again presented in the same court in a short time, we prefer to express no opinion, as to the sufficiency of the third and fourth pleas, and will briefly consider the other questions raised upon the record.

Objection was taken in the court below by demurrer to the sufficiency of the notice. The plaintiff joined in the demurrer, and the parties tendered an issue of law thus formed to the primary court for its decision. In Griffin v. The State Bank, 6 Ala. 908, 910, it is said, "The notice issued at the suit of a Bank against its debtor is certainly process, by which the latter is to be brought into court to answer to an allegation of indebtedness; but after the motion is made, which it informs the party will be submitted, it is something more than process; it is then to be regarded as the motion in writing, indentifying the debt sought to be recovered, and against which the defendant may urge any ground of defence recognised as available according to legal forms. The notice, then, may be assimilated to a declaration;

it subserves the purpose both of a writ and declaration, though it need not be so formal or technical in its allegations as the latter." The court then say that it is allowable to the defendant to plead or demur to the notice.—See also Duncan v. The Tombeckbee Bank, 4 Port. Rep. 181. It appears to be the constant practice to demur to such notices.

It will be observed that in this case the Bank proposes to proceed, as though its charter had never been forfeited, except only that it produces in court the certificate of three persons, purporting to be trustees appointed under the act of 1845, that the notes sued on are really and *bona fide* the property of the Bank. The notice says, "The Planters and Merchants Bank will move for judgment and award of execution." The judgment entry recites that said Bank came by attorney and produced and filed the certificate of the trustees appointed &c., and after setting forth the pleadings, adjudges that the plaintiff, (the Bank) recover &c. There is nothing in the record to show that the suit is by the direction of the trustees, unless indeed the fact that they have given their certificate can be so construed; but this can only be regarded as giving the court jurisdiction to proceed in this summary way, and for no other purpose.—Gazzam et al. v. The Bank of Mobile, 1 Ala. 268. It cannot cure a defect in the mode of instituting the proceeding. We need hardly repeat what has been so often decided, that in summary proceedings of this kind, which are in derogation of the common law, every fact must affirmatively appear which is necessary to give the court jurisdiction, and that the remedy cannot be inferred, but the party, claiming the benefit of it, must show affirmatively and clearly by the record that he brings himself within the statute authorising it.—Bates v. Planters and Merchants Bank, 8 Por. 99; Levert v. Same, ib. 104. The question presented is, have the forfeiture of the Bank charter, and the statutes of the State, predicated upon such forfeiture, wrought no other change in the summary remedy by motion, than to require the certificate of ownership of the claim, sought to be recovered, to be made by some person or persons, other than the president of the Bank, whose office is swept away by the forfeiture.

We are bound judicially to regard these statutes, although not specially pleaded. Such was the decision of our predecessors in Crawford et al. v. The Planters and Merchants Bank,

6 Ala. 289, 294.    Let us examine their effect upon the remedy here adopted.

By the seventh section of the act "for the final settlement of the affairs of the Planters and Merchants Bank of Mobile," passed the 13th February 1843, it is provided, "that for the purpose of settlement, the powers now granted to the said Bank for maintaining suits, and the corporate name of the Bank shall be continued, and may be employed by the commissioners aforesaid and the certificates, now required of the president of said Bank, may be made by either commissioner." The act, in a previous section, provided for the appointment of five commissioners to take into their possession the assets of the Bank, in the event the charter should be declared forfeited by the decree of the court, in which a proceeding by information in the nature of a *quo warranto* was directed to be filed.—Pamph. Acts 1843, p. 70-1-2. By the subsequent act to amend the previous statute, passed the 24th Jan. 1845, the number of commissioners is reduced and their duties are more particularly defined. They are to call a general meeting of the stockholders in Jan. 1846, who, at such meeting, are authorised to elect and appoint two or more persons, as trustees of the said Bank, and to fix their compensation; such trustees, when appointed, are required to enter into bond in twenty thousand dollars for the faithful performance of the duties of their office; and the assets of the Bank are required to be transfered to these trustees by the commissioners, before the 1st May 1846, at which time the office of the commissioners ceased. Provision having been previously made for the payment of the debts due from the Bank by the commissioners, the trustees are required to proceed diligently and without delay to collect all the debts due to the Bank; to sell the real estate; and on the first days of January and July in each year to divide the monies in their hands as trustees rateably among the stockholders. The 8th section of the act provides, " That the said trustees, or the survivor or survivors of them, may use the corporate name of the said Bank in the collection of the debts due to the same, and may use all the modes and powers, given to the said Bank by its original charter, or by any subsequent acts of the Legislature, for the collection of its debts, in the same manner, as if the charter of the Bank had never been forfeited.—See Pamphlet Acts of 1845, pages 46-7-8.

It does not admit of a doubt but that the intention of the Legislature in the enactment of these statutes was to vest the power, which had previously been confered upon the corporation as such, of suing upon its demands, &c., in the trustees, who could exercise it, using the *name of the corporation*, which for this purpose is continued. The Bank, as an artificial being, after the forfeiture of its charter, exists no longer in legal contemplation, and the statutes above quoted do not reserve to it the power to sue, but this power is vested in the commissioners by the first act, and in the trustees by the second. They can exercise it as though the charter had never been forfeited, but the Bank as such, independent of them, can exercise no powers, otherwise the judgment of forfeiture and the legislative action upon it would become nugatory. The Bank in ordinary suits, where no certificate would be required to confer jurisdiction, might collect demands, despite of the trustees, if it possessed the power to sue without their direction, and would thus drive them into chancery for an injunction. But *it is the creature of the statute, and dependant upon the statute for its powers and the mode of exercising them.*—The Bank v. Dandridge, 12 Wheat. 64; 13 Peters, 587. Especially must it find a warrant clearly given by the statute for *a resort to this summary remedy,* otherwise the proceeding cannot be upheld. The Bank having then *no power to move in this case,* but that power having been confered on trustees to be exercised in the name of the Bank, it is clear that, unless the record exhibits the trustees as invoking the aid of the court, the Bank, as such, on its own motion, cannot recover. Laying the certificate out of view, which as we have shown cannot be looked to except merely as required to give jurisdiction, the trustees are entire strangers to this record, and the Bank alone is the party, and recovers independent of them. We repeat that no such remedy is now reserved to the Bank, but only to the trustees who may move in the name of the Bank. This objection may at first view seem more technical than solid, but when the consequences to which a contrary doctrine might lead are looked to, it will be found to possess importance in the remedial administration of the law. In The Bank of Niagara v. Johnson, 8 Wend. 645, it was held, that where receivers had been appointed for a suspended bank, they had the right to use the name of the

Bank, which could not under the statute sue in its own name, but that in such case, "in the declaration it must be avered that the suit is prosecuted by the direction of the receivers." Analogous in principle is the case of Renick v. Bank W. Union, 13 Ohio, 298—so, also, in 13 ib. 251, *et seq.*, it was held, that after the forfeiture of the charter and the appointment of receivers, the latter must sue in the name of the corporation, *and the declaration must show the character in which they prosecute.*

Our conclusion is, that as the record fails to show that this motion was made by any one, in whose favor the court might rightfully render a summary judgment, and award execution, it fails to show that the court had rightful jurisdiction, but exhibits a judgment in favor of, and rendered on the motion of a party, from whom the statute has taken the power of moving, and this against the objection of the defendant to the legal sufficiency of the motion. The demurrer to it properly raises the objection and should have been sustained. It is clear that the Bank should move and recover, if at all, by its trustees.

We deem it unnecessary to notice the other objections, for want of proper recitals in the judgment entry to confer jurisdiction upon the court.

Let the judgment be reversed and the cause remanded.