JEMISON vs. THE PLANTERS' AND MERCHANTS' BANK.

1. In a summary proceeding under the statute, by a Bank whose charter has been forfeited, and her affairs placed in the hands of trustees for settlement and liquidation, the notice having been held defective on error, for the want of an averment that the suit was instituted by the direction and authority of the trustees, the court below to which the cause is remanded may permit an amendment of the notice by the addition of that averment.

2. The amendment may be made in such case by annexing the trustees' certificate to the notice, averring that the Bank, " by its trustees named in

Jemison v. The Planters' and Merchants' Bank.

the certificate annexed hereto, appointed under the act therein specified, will move," &c.

3. Where the affairs of a Bank are by statute placed in the hands of trustees for settlement, after a judgment has been rendered on *quo warranto* against the Bank declaring its charter forfeited, the subsequent reversal of that judgment does not affect a suit previously instituted by the trustees against a debtor of the Bank, nor can he take advantage of that reversal to protect himself against the rendition of judgment.

4. The act of 1850, (Pamphlet Acts 126 § 2,) which directed a sale of the remaining assets of the Planters' and Merchants' Bank of Mobile, does not repeal by implication the act of 1845, which authorized the appointment of trustees to settle its affairs, and gave them power to use all the remedies to which the Bank, while in existence, was entitled; and a sale pursuant to that act, of notes then in suit, does not affect the further prosecution of it for the benefit of the purchaser.

5. In a summary proceeding by notice and motion against a Bank debtor, if the proper certificate is appended to the notice, that the note is really and *bona fide* the property of the Bank, the certificate is proof of the jurisdictional fact to the end of the suit, although the note is sold or assigned before judgment.

6. The trustees of the Planters' and Merchants' Bank of Mobile, appointed under the act of 1845, were authorized to take individual notes to secure a balance due to the Bank from a suspended Bank of another State, and to institute suit thereon by the summary remedy of notice and motion.

7. The Mississippi statute of 1840, (Hutchinson's Code 324, *et seq.*) which forbid the Banks of that State to "transfer by endorsement or otherwise any note, bill receivable, or other evidence of debt," is unconstitutional, being in violation of the section which declares that no State shall pass any law impairing the obligation of contracts.—(Constitution U. S., Art. 1, Sect. 10.)

ERROR to the Circuit Court of Mobile.

Tried before the Hon. LYMAN GIBBONS.

This action was commenced at the Fall term, 1846, of the Circuit Court of Mobile, by a notice of motion in the name of the Planters' and Merchants' Bank against the plaintiff in error, for a summary judgment on two notes executed by said Jemison, each for the sum of $4,189 75, with interest from the first day of January, 1842, dated Columbus, Mississippi, April 5, 1842, and payable to the order of Eli Abbott, one on the first day of January, 1844, and the other on the first day of January, 1845.

To the notice was appended the following certificate: "We, Hindman Barney, David Stodder and Henry Goldthwaite, trustees of the Planters' and Merchants' Bank of Mobile, under an

act entitled ".an act to amend the laws heretofore enacted for the final settlement of the affairs of the Planters' and Merchants' Bank of Mobile," approved January 24, 1845, do certify, that the debt specified in the notice aforesaid, is really and *bona fide* the property of said Bank.   Witness our hands," &c.

The defendant appeared, and pleaded : 1. *Non assumpsit;* 2.   That there was no such corporation in existence as the said Planters' and Merchants' Bank of Mobile ; 3. That said notes described in the notice were given by defendant to the Commercial Bank of Mississippi, payable to the order of said Eli Abbott, who was the accommodation endorser of defendant, and endorsed by him ; that said Commercial Bank afterwards transferred said notes to plaintiff in express violation of a statute law of Mississippi, entitled " an act requiring the several Banks of this State to pay specie, and for other purposes," which statute is set out in the plea ; 4. The fourth plea contains substantially the same averments as the third, with the additional averment, that said Commercial Bank transferred and delivered said notes to the plaintiff in the State of Mississippi.

The plaintiff demurred to the second, third and fourth pleas, and joined issue on the first.   He also replied to the third and fourth pleas, that the Commercial Bank of Columbus, in good faith, and to pay a debt due to the plaintiff by said Commercial Bank, delivered said notes to the plaintiff, of which defendant had notice ; and that said defendant afterwards consented that the money specified in said notes should be paid to plaintiff under said transfer.   To this replication there was a demurrer, which was overruled.

A trial was had on issue joined, which resulted in a verdict and judgment for plaintiff.   The case was taken to the Supreme Court by writ of error, where the notice was held to be insufficient, for the want of an averment that the suit was instituted by the direction and authority of the trustees ; and for this error, the judgment was reversed, and the cause remanded.--See 17 Ala. 754.

At the Fall term, 1850, after the cause was remanded, the plaintiff moved for leave to file a declaration ; also to amend the notice, and to make proof that the proceedings were commenced by the said trustees.   The court granted the motions ; and the plaintiff then amended his notice by inserting these words : " By its trustees named in the certificate annexed hereto, and ap-

pointed under the act therein specified." To this action of the court the defendant excepted.

The bill of exceptions contains the following state of facts, as being agreed on by the parties on the trial : " The parties to this cause agree, that the Commercial Bank of Columbus, Mississippi, existed in that State, under and by virtue of an act of the legislature, a copy of which is filed with this case, as a part of the same ; that the said State of Mississippi, in 1840, passed an act found in Hutchinson's Miss. Code, on pages 324 *et seq.*, which act, and any portion of the statute law of that State explanatory thereof, is made a part of this case ; that defendant's notes described in said notice were discounted by the said Bank of Columbus, and never held by that Bank, as the legal owner and holder thereof, till 1843 ; that the various acts of the general assembly of this State, in relation to said Planters' and Merchants' Bank of Mobile, are to be held and taken as public acts ; and that the records of the Supreme Court containing the decision reported in 12 Ala. Rep., be also a part of this cause ; that after the reversal of the said cause, no further proceedings were taken in it, but the Bank continued in a course of *litigation;* that the notes specified in the notice were sold to Edward Bell and another, in December, 1850, under the act of the general assembly, and that this suit is continued for their benefit, by the consent of said trustees ; that the statutes of Mississippi on the subject of interest, are to be made and held a part of this case ; that Henry Goldthwaite, one of said trustees mentioned in the notice, died in 1847 ; that there shall be no other plea than the general issue, and that this shall be sufficient to admit all matters of defence which could arise under this agreed state of facts, if specially pleaded."

The agreement also contains the following imperfect sentence : " It is further agreed, that under the considerations, and in the manner specified in the statement of Franklin L. Owen, which statement is made a part of this case, as evidence of the facts in issue, and is annexed hereto."———. Owen states that he was employed in said Planters' and Merchants' Bank during the whole time it was in operation, and continued afterwards in the employment of its commissioners and trustees ; that said Bank acted as the general agent of the Commercial Bank, from September, 1836, until the suspension of the latter Bank in 1837 ;

Jemison v. The Planters' and Merchants' Bank.

that at the time of its suspension, said Commercial Bank was largely indebted to said Planters' and Merchants' Bank; that a partial settlement was had between them on the 6th of April, 1843, and on this settlement the notes in suit were transferred to plaintiff, in part payment of the balance due from the Commercial Bank; that the Planters' and Merchants' Bank suspended in the fall of 1843, and the notes in suit, together with its other assets, were placed in the hands of commissioners, appointed by an act of the legislature, for final settlement of the Bank affairs; that, in 1845, said notes were placed in the hands of the Bank attorneys for suit; but before suit was commenced, Jemison had an interview with said commissioners, and promised to pay said notes out of his next crop, if they were withdrawn from suit; that said notes were accordingly withdrawn; but Mr. Jemison failing to comply with his promise, they were again placed, in 1846, in the hands of the Bank attorneys, and this suit was instituted; that these notes were afterwards transferred to the trustees of the stockholders, under another act of the legislature, and were afterwards sold by said trustees, at public auction, on November 30, 1850, and were purchased by Bell and others.

The defendant asked the following charges:

1. That if the jury believed from the evidence, that the plaintiff had now no property or claim of property in said notes, but that they were sold to Bell and others in December, 1850, then plaintiff was not entitled to recover;

2. That if they believed from the evidence, that the judgment of forfeiture against said Planters' and Merchants' Bank had been reversed before the amendment of the notice in this case, and that said judgment of reversal is yet in full force, then plaintiff was not entitled to recover;

3. That if they believed from the evidence, that Henry Goldthwaite died before he was made a plaintiff by the amendment of the notice, then the surviving trustees were not entitled to recover.

These several charges the court refused to give, and instructed the jury, in substance, that the act of the legislature of Mississippi of 1840, prohibiting the transfer of said notes by the Commercial Bank, was unconstitutional, and that if they believed the evidence, plaintiff was entitled to recover.

The defendant excepted to the charge given, and to each refusal to charge as requested; and he now assigns for error the several rulings of the court, above set forth, to which exception was taken.

HOPKINS & JONES, for plaintiff in error :

The opinion formerly delivered in this case, is conclusive of the questions then decided; the court will now decide such questions only as were not then determined.—1 Porter 321; 17 Ala. 770; 1 Johns. Ch. 189; 6 Wheaton 113; ib. 355; 10 ib. 446. The former opinion decides, that the Bank was incapable of maintaining this suit, as her charter had been forfeited before its commencement; that the right of action belonged only to the trustees; that the certificate annexed to the notice could be looked to for no other purpose than to see whether it stated that the property in the note belonged to the Bank, so as to give the court jurisdiction of the suit by notice and motion; and that the notice was both a writ and declaration, and might be so treated by defendant.—17 Ala. 758; 6 ib. 908; 14 ib. 676; 4 Porter 183; 6 S. & Mar. 518; 22 Wendell 610; 1 Chitty's Pleading 256. If a declaration had been filed and acted on, in a case like this, it would have been an act of supererogation, and the defendant would have had the right to treat the notice as a declaration.—4 Porter 183, 184.

The court below erred in hearing and allowing evidence to the effect that the notice was issued by the direction and authority of the trustees.—1 Peters' R. 338; 1 Story's R. 310, 312. It is less satisfactory proof than the certificate would be, which is inadmissible for any such purpose. The notice only, which is also the declaration, determines who is the plaintiff; and the court had no power to allow a change of the plaintiff, by giving the trustees permission to amend the notice by making themselves plaintiffs. This error appears, as well from the entry of the judgment allowing the amendment, as from the bill of exceptions.—3 Stewart 324; 1 Ala. 74; ib. 525; 3 ib. 154; ib. 660, 668; 4 ib. 120; 18 ib. 653; Governor, use &c. v. Spence, at January term, 1853; 1 Cowen 37; 22 Wend. 610; 1 Story 310; 8 Sm. & M. 53; 8 Watts & Serg. 301; Riley's Law Cases 79.

If the trustees had been made plaintiffs, pursuant to the leave

granted by the court, the demurrer to the amended notice should have been sustained.. The original notice was the original declaration, and the amended notice the amended declaration. It would then have appeared from the original and amended notice, which are parts of the record, that the court had permitted a change of the party plaintiff.

But, although the court below erroneously granted leave to change the plaintiff, the attempt of the plaintiff's counsel to make the change, was a failure, and the Bank is still the plaintiff in the amended notice, as it was in the original notice. The original notified Jemison that the Bank would move against him, and by the amendment he is notified that the Bank, " by its trustees named in the certificate hereto annexed, appointed under the act therein specified," would move against him. The trustees are not named in the amended notice. The record does not disclose their names. The certificate cannot show, as has been already decided in this case, that they are the plaintiffs, and that they directed this suit to be brought.—17 Ala. 760 ; 18 ib. 653 ; 22 Wend. 608, 610 ; 1 Story's R. 310 ; Governor, use &c. v. Spence, at January term, 1853.

The trustees are the representatives of the defunct corporation, as an executor or administrator is the representative of his testator or intestate. If, at the date of the judgment of forfeiture, there had been a suit pending, brought by the Bank before the forfeiture, it would have abated by the Bank's loss of its capacity to maintain suits, and could have been revived on motion, or by scire facias, in the name of the trustees.—6 Sm. & M. 513, 529, 530 ; 5 Porter 231 ; 12 Sm. & M. 524. If a suit were brought in the name of A after his death, and the court should allow an amendment of the writ, so as to make B, the administrator of A, the plaintiff, it would be an illegal change of the plaintiff; but if B, instead of making himself by name plaintiff, should amend the writ by stating that the administrator of A, whose name appeared in the letters of administration annexed to or filed with the writ, sued, and the writ had the effect of a declaration in such a case, as the notice has in this, the letters could not be looked to, to ascertain who the plaintiff was, as they could not be a part of the record, unless they were set out on oyer. The certificate cannot be made a part of the record by a prayer of oyer, and, if it could be,

the plaintiff could not avail himself of the prayer. If the letters were a part of the record, they could not show who the plaintiff was ; this could only be shown by the writ.—Governor, use &c. v. Spence, *supra.* A demurrer would surely lie to such an amended writ. The Planters' and Merchants' Bank, in whose favor only the judgment was rendered, is as exclusively the plaintiff in the last as it was in the first judgment. The Bank and Jemison are the only parties to this writ of error, as they were to the former one. They are, necessarily, the only parties to the writ, as they are the only parties to the judgment.—5 Porter 230 ; 6 Ala. 610.

The act of June 30, 1837, authorized the summary remedy, by motion, against such persons only as became indebted to a bank while it existed in possession of all its corporate faculties. The charter of the Planters' and Merchants' Bank was forfeited before the notes in suit were transferred ; and after the forfeiture the defendant in error was not a bank.—17 Ala. 760 ; 14 *ib.* 676 ; 3 Sm. & M. 791. The remedy under the act of 1837 is confined to debtors by bills, notes &c., acquired while the Bank was in the full possession of its corporate powers, and after the passage of that act. The Bank never had any title to the notes sued upon, and therefore never acquired them. The trustees acquired the notes, if the endorsement from the payee transferred the title, as they, and not the Bank, became entitled to any right of action the endorsement may give. When the endorsement was made, the right of action against the Commercial Bank belonged to the trustees, and the transfer of the notes made Jemison indebted to them, if to any one.—8 Porter 106. In no just sense did Jemison become indebted to the defunct Bank, as the Bank never had any right of action against him. The trustees, therefore, could not truly certify that the property in the notes was in the Bank ; because the Bank, while in possession of its corporate powers, never had any interest in them. The property in the notes, if the endorsement transferred it from the payee, was, with the right of action, in the trustees, who had no right to any other than a common law action.—6 Sm. & M. 513, 530 ; 12 *ib.* 516.

As the evidence of Owen proved that the Planters' and Merchants' Bank settled with the Commercial Bank in 1843, after the forfeiture of the charter of the former, and took the transfer

of the notes as though its charter had not been forfeited, without the action and authority of the commissioners, the endorsement was ineffectual, and did not transfer the title to the notes from the payee.   The powers which the act allowed to be exercised after the forfeiture, for the purpose of settlement, were required by the act which granted them to be exercised by the commissioners.   When the settlement with the Commercial Bank was made, the Planters' and Merchants' Bank, as a bank, had no more power to make a settlement, than a former president had to certify that the notes were the property of the Bank. The grant of authority to make a certificate or settlement, is in favor exclusively of the commissioners.—17 Ala. 759 ; Pamphlet Acts of 1843, 70, 72, § § 2, 7.

Independently of the pleadings, the facts in the record must show affirmatively a case in which a judgment can be legally rendered on motion.   The evidence in the record does not prove, as it should, that the notes which did not belong to the Bank before the forfeiture of its charter, were acquired in the settlement afterwards made by its commissioners, or by some agent of theirs authorized to make it.—8 Porter 104, 361.

The representatives of the defunct Bank had no authority to acquire the notes upon a settlement, unless the Commercial Bank was in failing circumstances at the time of transfer, and there is no evidence that such was the fact.—14 Ala. 677, 688.

Neither the Bank, nor the trustees, nor the stockholders, had any beneficial interest in the notes at the time judgment was rendered, (and therefore no right to a judgment.—12 Sm. & M. 524 ;) because the notes had been sold by the trustees before the rendition of the judgment.   The plaintiff in the motion was permitted to recover a judgment for what belonged to others.   If the property in the notes had belonged to the plaintiff in the motion at the commencement of the suit, the subsequent transfer of it before trial would as effectually have destroyed the plaintiff's right to a judgment, as the want of property at the commencement of the suit and down to the time of trial.—16 Ala. 276, 279.   When it became necessary to give the court jurisdiction to try the motion and to render a judgment, by making proof by a proper certificate that the property belonged to the Bank, at that very time the property belonged to Bell and others.   The sale of the notes was made under the authority of the act of February 12, 1850, and tranferred all the property

in the notes to the purchasers, Bell and others. The purchasers had no right to sue, except in chancery.—12 Sm. & M. 524; 2 Wheat. 373. The act of 1850 gives no authority to continue a suit after such a sale, and recover a judgment for the use of the purchasers, upon a certificate that the property in the notes was in the plaintiff, against the proof that the property was then in the purchasers, and the plaintiff's admission of that fact. As the act of 1850 required the sale of the notes, and the notes were sold before this judgment was rendered, that act could not have intended to continue the authority in any person to certify that the property in the notes, in such case, was in the Bank; and the passage of that act was a repeal, by implication, of so much of the former act as authorized any person to make such a certificate. The plaintiff in the motion had no right, if the charter of the Bank had not been forfeited, to bring a suit by notice for the use of another. The effect of such an allega- tion would be, that the property in the notes did not belong to the plaintiff, and the notice would be fatally defective. As the plaintiff had no right to commence a suit by notice and motion for the use of another, it had none to maintain such a suit after the notes were sold, and the property in them transferred to others, although the sale was made pending the suit. If the plaintiff could recover a judgment in such a case, the recovery would be without property in the plaintiff, and for the actual benefit of the purchasers. The judgment is not in favor of any party who has an interest in the notes. The Bank has no in- terest in them. There was no authority to make Bell and the other purchasers parties as beneficiaries; and if there had been, they were not made parties to the motion.—12 Sm. & M. 524; 3 Stew. 324; 1 Ala. 74, 76, 525; 6 Sm. & M. 527. The court, therefore, erred, in refusing to instruct the jury that, if they believed from the evidence that Bell and others had pur- chased and then owned the notes, the plaintiff was not entitled to recover. If the suit had been a common law action, the plaintiff had no right to recover, against the proof that no part of the interest in the note belonged to him, and his admission of that fact.—16 Ala. 276, 279.

The reversal of the judgment of forfeiture destroyed the ca- pacity of the trustees to maintain suits, and make certificates which could give a court jurisdiction by motion founded on no-

tice.—12 Ala. 657. As they had derived all their rights, as trustees, from the judgment of forfeiture, the reversal of that judgment terminated the rights of which the forfeiture was the only source. If the Bank had been constantly guilty of *non-user* since the reversal of the judgment of forfeiture, the neglect, *per se*, is not a forfeiture, but can only become a ground of a judgment of forfeiture, in a proper judicial proceeding against the Bank.—5 Johns. Chan. R. 378; 6 Cowen's R. 23; Hopkins' Chan. 355; 8 Sm. & M. 151; Angell & Ames on Corporations 664; Kent's Commentaries 310, 311; 1 Paige 590; 4 *ib*. 481; 3 Burr. 1866; 7 Leigh 154; 14 Pick. 663; 15 *ib*. 351; 7 Conn. 45.

Although there may have been no president and directors of the Bank since the judgment of forfeiture, there have been constantly stockholders, who constitute an integral part of the corporation. They could have elected a president and directors after the reversal of the judgment, and they have a right to do so now. If the Bank, suing in its corporate name, neglect to have a president, who alone can make a certificate which will give the court jurisdiction to render judgment on motion and notice, no such suit can be maintained. The certificate made by the trustees ought to have been disregarded by the court below.— Angell & Ames on Corporations 652 *et seq.* to 660; 3 Dess. Chan. 557; 1 Hopkins' Chan. 300; 2 Kent's Com. 295, 296, 307, 309, 310, 311; 3 Burr. 1866; 1 Paige 590, 597; 4 *ib.* 481; 5 Johns. Chan. 378.

As the notes were not made, until after the passage of the act of 1840 by Mississippi, the prohibition by that act of the transfer of the notes was not a violation of the constitution of the United States.— 6 Howard 335; 3 Sm. & M. 661; 8 Peters 88, 110.

JOHN A. CAMPBELL, *contra :*

The point upon which the judgment in this case was formerly reversed, was brought to light by the members of the court after a second argument. That point was, that it was essential to the validity of the proceedings that they should appear to have been instituted by the trustees. The form of proceeding adopted in the case, corresponds with that which had been employed during the existence of the Bank, and which had re-

ceived the sanction of the court.—6 Ala. 289. The certificate of the trustees was designed to protect courts from the abuse of the summary jurisdiction, and it stands as conclusive evidence that the proceeding, of which it forms a necessary part, was for the Bank. The cases relied on in the opinion of the court, do not support its conclusion. The case in 8 Wendell does not decide that the averment of the authority of the trustees must appear in the declaration. The court decided that, where the existence of the Bank was denied by a special plea, the receiver should show, in his replication, not only his right to the proceeds of the case, but also that he caused the suit to be instituted.— The case in 13 Ohio 251, was not upon the point. The case in 13 Ohio 298, was where a defunct corporation had recovered a judgment during its existence ; after its dissolution, a law was passed, allowing receivers or trustees to revive such judgments. This was not a proceeding by the receiver or trustee, but against him. The writ was against the Bank only, not noticing the fact of the existence of any trustees. These cases, surely, are not sufficient to overturn the plain language of the acts entitling the Bank to use the same form of proceeding as if the statute of forfeiture had not been passed.—Pamphlet Acts 1843, 70 § § 7, 9 ; ib. 1845, 46 § 8 ; and the equally plain language of the case in 6 Ala. 289. The eighth section of the act of 1845 is so explicit in its terms, that I cannot see how a proceeding, which is perfect according to the decisions applicable to the active Bank, can be imperfect during the continuance of that act.

Granting the obligatory force of the decision, the question arises, could we, after the order remanding the case, supply the proof of the authority ? The suit is proper in the name of the Bank, and according to the form adopted ; could we establish it as a fact, that the motion was submitted by the authority of the trustees, and could we place that averment in the notice ? Both courses were adopted, in order to obviate all objection to the form of the proceeding. It is said, that we have introduced a new party on the record, and numerous cases are cited to show that we have introduced new parties improperly. The party on the record, is the Planters' and Merchants' Bank of Mobile. The act allows that name to be used, and all the modes of proceeding at any time permitted to that party to be employed in the same manner as if the Bank had never forfeited its charter.

The Bank was continued in operation, for the purpose of settlement.—6 Ala. 289. The fact proven is, that the suit was commenced by legal authority. All is rightfully done, if done by order of the trustees; that fact is now established. The record is complete as to parties, without the addition of a new one. The court has held that the plaintiff must appear, not by attorneys, but by trustees. The trustees are introduced. Can this be done ? The amendment to a replication, showing the same fact, was allowed.—8 Wendell 645, 656. The character . in which a captain, suing for a military fine, received his command, was introduced by amendment.—25 Maine 164. The agent for a State prison was allowed to introduce his proper name before his official style.—1 Denio 279. The converse, the style in which persons held lands, and sued for damage to them, was allowed.—3 Greenl. 243. After a plea of infancy of the plaintiff, a guardian was allowed to be introduced.—8 Pick. 552; 3 New Hamp. 345. These cases are parallel with this. An infant cannot maintain a suit alone ; the aid and direction of a guardian or next friend, is necessary, and they can be procured after suit brought. In this case, the suit was brought by the proper direction ; we only ask leave to place the fact on record. The name of a legal trustee, for the use of a plaintiff who is the *cestui que* use, is allowable.—1 Har. Penn. R. 60 ; 2 *ib.* 69 ; 8 S. & W. 342 ; 22 Verm. 460. The principle cited by plaintiff's counsel from Riley's Cases 69, fully supports our view, "You may add to or vary the particulars set out in subsequent proceedings, where the previous proceedings are general in their times ; *provided*, that in so doing, you do not go beyond the intendment of the previous proceedings. For instance ; you may add to or alter the counts of a declaration, provided you keep within the general complaint set out in the writ. This is an example of amending, not by, but within the scope of the record."

Supposing the averment necessary, that the trustees directed the suit in this case, it is a fair intendment from the record that such a fact existed. The trustees are named, and perform a part essential to the case. They are in court for one purpose, and their act in one step in the cause is of record. The courts have allowed sheriffs to file their returns of service of the original writ, after error brought ; and orders of publication to be

proven, with the fufilment of them.—2 Ala. 415; 2 Stew. 492. The court is referred to the last clause in section 50, Clay's Digest 321, where the plenary power of the courts to make amendments is conferred.

There are decisions to the effect that orders of amendment cannot be assigned for error, where the party has pleaded.—1 Ala. 246; 3 Peters 12, 32; 4 ib. 492; 9 Wheat. 375; 3 Green 183; 6 Cranch 206. By pleading, the party waived his right to complain.—1 Stew. 425; 5 Howard's S. C. R. 30. The effect of the amendment is, to perfect the proceeding from the inception; it relates to the time when it should have been made. Daniel's Ch. Pr. 455, note 1; 10 Ala. 92, 678; 14 ib. 279; 2 Stew. 255. The act of instituting the suit took place when the motion was made; the proof of the fact showed that the suit was properly in court. Even the certificate need not to have been made, until the trial.—6 Ala. 286. This fact could have been proved in the same manner.—1 Stew. 442. The death of Judge Goldthwaite made no change in the act. The act was done, and the only question was, by whose direction. That was matter of proof, which might be made at the trial.

The alteration in the condition of the judgment of forfeiture, did not affect this case, which was already legally in court, by the motion and certificate. The court had jurisdiction over it, in so far as the parties were concerned. Its jurisdiction was not ousted, by any matter *ex post facto* occurring to those parties.—8 Peters 1; 12 ib. 165; 2 ib. 565; 1 Barbour's S. C. R. 449; 9 Wheat. 537; 2 Brock. 516. The judgment did not affect practically the relations of the Bank. The trustees continued their operations under the liquidating laws, and the State continues to hold the franchises seized under the judgment of forfeiture. The acts of the trustees were done while the judgment was in full force, and were valid under the powers that had been conferred on them. The suit had been legally commenced, and when it became a suit in court, it was governed by common law proceedings and principles. The distinguishing characteristic of this suit from others terminated with the introduction of the case to the court; after that, it follows the same course as any other case.

The sale of the property under the act of 1850, does not alter the condition of the suit. That a paper may be assigned,

*pendente lite,* and the suit continued for the benefit of the assignee, is clear : it is a matter of every day's occurrence, and there are cases where the assignee would not be allowed to maintain a new suit.—2 Chitty 637 ; 1 Taunton 109. The cases of assignment, and the protection extended to the assignee, will be found in 1 Wheat. 233 ; 14 Conn. 123 ; 29 Maine 9 ; 15 Mass. 534 ; 1 Foster 121 ; 11 Mees. & W. 84 ; 7 Green 28. The ownership of a note cannot be inquired into, to defeat a suit.—15 Ala. 834 ; 17 Vermont 589; 4 Wharton 489 ; 25 Wendell 411; 7 Shep. 437 ; 15 Wendell 640. These cases are applicable to a suit at its commencement. Far stronger is the case of a transfer *pendente lite,* and where the assignor agrees to carry on the suit, as is proven in this case. A suit pending changes the character of an instrument, from a negotiable to an assignable character.

It is insisted that the act of 1850 terminates the existence of the Bank, and all its functions, as a suitor in court, and as a party on the record. 'This is not the case. The act was designed for the benefit of the corporation. The legislature, from the beginning, saved the rights of the stockholders, and in no instance employed its powers to impair their securities or their property. The sale contemplated was of choses in action, some in judgment, some in litigation, and some never litigated. To say that suits then pending might not be sold, with the advantage of the fact, would be to expose the Bank to the loss of a great benefit. In one of the notes in this suit, the dismissal of the suit would be to destroy the title to recovery, as Jemison could then plead the statute of limitations ; and other instances of the kind might occur. A note offered in connection with an existing suit, would bring its value; without the connection, its value would be destroyed. It would be to give a character to these statutes they ought not to bear, to say that the power to maintain suits did not continue until all the rights of action had been legally settled. The stockholders were materially interested in this right, and the general assembly no where shows any purpose to withdraw it. The broad terms of the different acts all indicate that this construction would carry into effect the will of the legislature.—11 Humph. 572.

As to the effect of the statutes of Mississippi : I insist that Jemison, having agreed to pay these notes to the Bank, is es-

topped from setting up the laws of Mississippi. What are the facts? The Bank of Columbus, with unlimited powers to acquire and alienate property, and to make contracts, becomes a debtor to the Planters' and Merchants' Bank. The legislature of Mississippi, after this, forbids the Bank to alienate a portion of its property. The Bank, in defiance of the prohibition, in Alabama, appropriates a portion of its property to pay that debt. The property is alienable under our laws. The object of the transfer is meritorious by our laws. Our laws would have taken away the right of the Columbus Bank to the debt, by attachment at the suit of the plaintiff. Jemison has no defence to the notes, which are negotiable on their face; he only insists on the illegality of the transfer from the Columbus Bank to the Planters' and Merchants' Bank. Knowing of this transfer, he approves it, and promises to pay the debt to the plaintiff. He is under a moral obligation to pay it; if he had paid the money to the Columbus Bank, and that Bank had paid it to the plaintiff, no complaint could have been made. He obtains indulgence in consequence of his promise; he is estopped.—8 Term R. 595; Broom's Legal Maxims, (50 Law Library,) 310; 7 New Hamp. 549; 8 Shep. 484; 3 Ala. 158; 8 Peters 372.

Our courts would give no aid to such a statute as that of Mississippi. Property is alienable with us; it is a right inherent in every owner or proprietor. The payment of debts with property or money, is a duty imposed by our laws on every debtor. We would recognize no restrictions upon this right, nor consent to impediments to the performance of the duty.—The limitations under which one State gives effect to the laws of another, exclude this case.—Story's Conflict of Laws § § 29, 30.

The restriction upon the Bank of Columbus is plainly unconstitutional; it violates the rights contained in sections two, three and four of the charter of the Bank.—Mississippi Acts 1836, 145. This question has been fully settled by the Supreme Court of the United States, in 6 Howard 301. The principles of that case are applied to bank charters of the same kind, and to transactions of every description under these charters, in Mississippi.—10 Sm. & M. 428. A case in 11 Sm. & M 555, was one of an assignment by the Bank in 1843: see also 10 How. 190.

It is said, that the summary process will not lie for notes taken by the trustee.—14 Ala. 668; 17 *ib.* 761. The papers taken in the cases last cited, were taken under the same circumstances as this paper. These decisions, and that in 6 Ala., are to the effect, that the corporation, as an artificial person, was continued for all purposes of settlement and liquidation. The trustees were agents for those interested in the corporation. The legal interest of none of the effects was placed in them; they were commissioners, acting under delegated authority.— The indebtedness of every party to a debt belonging to the institution, was to the institution as a corporation, and never to the trustee. The power of the Bank to maintain suits has never terminated; they were continued by enactment in 1843 and 1845, and the reversal of the judgment of forfeiture gave to the Bank its former corporate existence. The Bank continued in liquidation, and the acts performed under the liquidating statutes are valid.

The case before the court is not analogous, in any of its aspects, to the case of a corporation whose charter has expired. There the party ceases to exist, and can do no legal act. The case here is that of an artificial person, which has never lost its capacity to sue, or to make contracts of a specified character. The contract, in taking these notes, selling them, and allowing the continuance of this suit, are all within the exercise of that function of the corporation for which it has been continued.— The continuance of the suit enhanced the price of the property, and there was nothing to hinder this in the condition of the Bank. The charter of the Bank is a continuing law, and there is nothing to preclude the Bank from now going into operation.

PHELAN, J.—When this case was last here, it was decided, that the notice in the case was demurrable, because it did not show that the suit was instituted in the name of the Bank by the direction and authority of the trustees, and the judgment was reversed for that cause.—17 Ala. 754.

The court below, previous to the last trial, on motion of defendant in error, permitted an amendment to be made, by which, instead of reading " the P. & M. Bank will move," &c., the notice was so changed as to read thus: " The P. & M. Bank,

*by its trustees named in the certificate annexed hereto, appointed under the act therein specified,* will move," &c. ; the words in italics being inserted.

It is now urged by plaintiff in error, that this was allowing a change to be made in the parties to the suit, which, it is said, cannot be done under a motion to amend. No change can be made in the parties to the suit, by way of amendment of the writ or declaration, it is conceded. The authorities to this point are numerous and clear ; and also, that to drop a *cestui que use,* or to insert one, is to change the parties under our law.—Teer v. Sandford, 1 Ala. 525 ; 1 Stewart 162.

But what are the facts, and the law of this case, to the point in question? When this suit was instituted, there was a judgment in force against the Planters' & Merchants' Bank of Mobile, declaring its corporate character defunct. There was also a public law declaring that the *trustees, or the survivor or survivors of them,* who were made so agreeably to the provisions of the law, might "use the corporate name of the said Bank, in the collection of debts due to the same," "and all the modes and powers given to the said Bank by its original charter, or by any subsequent acts of the legislature, for the collection of its debts, *in the same manner as if the charter of the Bank had never been forfeited.*—Acts of 1844-5 p. 46 § 8.

The corporate name was here authorized to be used, in the collections of the debts due the Bank, just as it had been done; but how? by whom? *By its trustees.* The corporate existence of the Bank was gone. If a notice issued, which on its face pre-supposed the continued existence of the Bank, or rather, if the continued existence of the Bank, as a corporation, was not, by some definite and certain mark or sign, distinctly negatived, the acknowledged law and fact of the case made such a notice demurrable.

The name was right, and its use fully authorized ; but an additional fact was necessary to make such name and its use appear lawful ; and that fact was the *agency* of the trustees in the matter. An averment setting forth this agency, would give life, *quoad hoc,* to a corporation as party plaintiff, which otherwise was defunct.

The idea that this was introducing a new party, or changing the plaintiff, is not defensible. The facts were always the same. The only difference between the first notice and the last, is, that

the last makes an existing fact appear which the first did not. Doubtless it was thought by those who instituted the proceedings, that the certificate which was appended to the original notice, and issued with it to the sheriff, did so connect itself with the notice by mere conjunction, and because it was a part of the proof in, the case, as to make this fact appear. This court could not so decide, consistently with what it considered sound principles. But the trustees are not parties in any sense. They are not the nominal party. The Bank is that, in so many words. They are not beneficiaries : for the beneficiaries of all such suits are the creditors of the defunct corporation. They are only those who are designated by law as having the right to use the corporate name of a defunct corporation for certain purposes ; and which name, if used without making this appear, may be treated in a legal proceeding as having no force or virtue. The amendment, then, we consider allowable, according to the liberal practice authorized and required by our statute on the subject of amendments.—Clay's Dig. 321 § 50. Or, even if it be conceded, that the certificate annexed to the original notice cannot be looked to " as any part of the record or proceedings," we are of opinion, that the amendment would be allowable upon the principle of supplying in a declaration (for a notice is both a writ and a declaration,) an averment consistent with the nature of the action, which had been omitted, and for the want of which the declaration had been held defective on demurrer. It is good, upon the principle that you may amplify a general complaint by giving any particulars within its scope.

The objection taken to the manner in which it was made, namely, by a reference to the certificate which was annexed to the notice, we do not consider good. If the trustees were even to be considered parties to the action, the certificate shows who they are, and how they became trustees, distinctly and plainly. The averment in the notice, connects this certificate, and embodies it in the notice, so to speak, by apt and proper words. The certificate is on the same paper with the notice, and the two come under the eye at a glance. The maxim " *id certum est, quod certum reddi potest*," applies in full force. But, as has been shown, the trustees are not parties to the suit ; it is only necessary to avoid the effect of a demurrer to the notice, that it should appear that the suit was instituted in

the name of the Bank *by them*, or under their direction; and this, beyond question, can be done in the way adopted by defendant in error, that is, by connecting the certificate with the notice by apt words, to show who were the trustees, and how they came to be such, that put this suit in the *name of the Bank* in motion.

But passing from this question, it is insisted, that the reversal of the judgment of forfeiture of the charter of the Bank, which took place in June, 1847, (12 Ala. 657,) had the effect, *ipso facto*, to restore the corporation to its franchises ; and that this necessarily took away from the trustees the power to carry on this suit any further in this form.

The facts of the case go to prove, that, after the decision of the *quo warranto* against the Bank, its franchises were seized by the State, and powers conferred on commissioners by the act of 1843, and afterwards on trustees chosen by the stockholders under the act of 1845, to wind up and make an end of the affairs of this corporation. The very trustees who direct this suit, had to be chosen by the stockholders. Again; in 1850, a period subsequent to the reversal of the judgment of forfeiture, an act was passed for " the final settlement of the affairs of the Planters' and Merchants' Bank of Mobile ;" and by this last act, these very trustees who instituted this suit, and who were chosen by the stockholders to do that and all other things necessary to wind up and settle finally the affairs of the Bank, were directed, after due notice to all persons to present their claims against the Bank by a given day, or be forever barred, to make public sale, " for cash, of all the remaining property, claims, rights and assets belonging to said Pank fund," and to make final distribution among all concerned.

The purchase by Bell and others of the Bank's interest in this claim, was made at that sale. In addition to this, it appears that the stockholders have never taken any step towards resuming their corporate powers and privileges, but have acquiesced in and acted under the law passed 12 February, 1850, for winding up finally the affairs of the corporation.—See Acts 49–50 p. 126.

If, under these circumstances, the stockholders should interpose themselves to arrest the progress of this action, they could not do it in this proceeding; and if they resorted to another forum, that forum would be bound to see that no injustice was

done to *third* persons. The action was lawfully begun, at the time it was begun. There was then a judgment of forfeiture against the Bank. Under the act of 1845, the stockholders had chosen trustees—these very trustees—to wind up and settle the affairs of the corporation; and in pursuance of that authority they instituted this suit in the name of the Bank. Being then right and lawful, and new rights and interests attaching to it, and growing up under it, the law will not permit those rights and interests to be disturbed or affected at their instance by anything occurring subsequently, which those newly interested could not be expected to foresee or provide against.

If the stockholders themselves could not interpose in this suit the reversal of the judgment of forfeiture, it follows very clearly, that a debtor of the corporation could not do so. A judgment in this action, go as it may, will undoubtedly protect the defendant from any subsequent action, and that is all he can claim.

But it is contended, that the act of February 12, 1850, (Pamphlet Acts 126 § 2,) pursuant to which these notes, then in suit, were afterwards sold by the trustees of the Bank, was a repeal, by implication, of the former act, which authorized trustees chosen by the stockholders to use the name of the Bank, and all the modes of proceeding which the Bank, while in existence, could use, to wind up and settle its affairs. Whether a repeal of that act, (the act of 1845,) in so many words, would have the effect of destroying the right of a lawful assignee from the trustees to use the name of the Bank to sue, it is not needful now to decide; but it is certainly not clear that it would.— Repeals by implication are never favored; and if we look at the nature of the case throughout, we shall find no reason to suppose that the legislature, by the act of 1850, intended to do anything but to promote, as far as it could, the settlement and close of the affairs of this Bank, in a way the most advantageous to creditors and stockholders.

The second section of the act of 1850 simply directed, that all the " remaining property, claims, rights and assets belonging to said Bank fund," should be sold for cash, by the trustees, and the proceeds distributed. It is a general principle of law, that a note or other claim in suit may be sold and assigned; and when so sold, the assignee buys with it, if nothing is said,

the right to continue the suit in the name of the seller, he being secured, if he requires it, against the payment of costs. The buyer or assignee takes the claim *in suit*, with every right, and under every liability, which appertained to it in that condition in the hands of his assignor. This is familiar law, and every day's practice. When, therefore, the legislature said to the trustees, " Sell all the Bank's claims by a certain day," they must have intended the claims in suit as well as others. But we must further suppose, when no restrictive words are used, that they intended to leave the claims in suit to the general rule governing such sales. This was for the benefit of the stockholders, and it is the common and natural interpretration to be put upon the act. Who would buy a note in suit, if the right to continue the suit did not go with it ?

But, that the Bank is the *bona fide* owner of the note in suit, must be certified by the trustees, as an indispensable fact to give jurisdiction to a suit by notice and motion ; and how can this be truthfully done, it is asked, when the Bank is no longer *bona fide* owner, but when Bell and others are owners in fact? A jurisdictional fact must exist at the time to which the question of jurisdiction, if it be tried, relates ; and when is that ? To the commencement of the suit.

A notice issues in the name of the Bank against the defendant, which describes accurately a certain note on which he is sued. To this notice is appended a certificate of the trustees, saying, " the debt specified in the notice aforesaid, is really and *bona fide* the property of said Bank." If those signatures be genuine, that certificate, under the law, is proof of the jurisdictional fact to the end of the suit; and there is no need for any future certificates, should the note in suit be sold or assigned twenty times. Each purchaser would succeed, among other things, to the benefit of that proof, as incident to the note.— There was proof, also, that the trustees expressly stipulated that the suit might proceed as it stood.

It is insisted that, at the time these notes were transferred, it was not possible to put the legal title to them in the Bank, because it was then a defunct corporation. But the powers of the Bank for maintaining suits, and its corporate name, were expressly continued in existence by the act of 13th February, 1843, and the subsequent acts for the purposes of settlement

of the affairs of the Bank by trustees. This is the idea continually kept in view in all the acts. To hold that a transfer of a note or bill could not be made in such manner as would alone give force and effect to these provisions, would be inconsistent with the manifest intention of the act. The right to take the legal title to the Bank, by its corporate name, is necessarily implied in the power given to the trustees to bring suits by notice and motion in that name. The only question really to be determined respects the right of the trustees to take these notes at all. For, if they possessed this right at all, the right to take them, and the title to them, in that way and manner which would enable them to use the corporate name of the Bank, and the summary remedy in collecting them by suit, is clear. This was the express design of the act of 13th February, 1843, and of the act of 1845 before quoted.

Now, as to the right of the trustees to acquire these notes. This depends upon whether they were taken from a debtor in failing circumstances, or to secure a " bad or doubtful debt."— See 14 Ala. 668. The proof shows that these notes were taken by the trustees, through their agent, in settlement and part liquidation of a long standing balance which the Planters' and Merchants' Bank held against the Commercial Bank of Columbus, an institution which had suspended specie payments. This is enough to show that the trustees had the right to acquire these notes, since a balance so due from a suspended Bank cannot be considered otherwise than a bad or doubtful debt.

This brings us to the question concerning the constitutionality of the statute passed by the Mississippi Legislature, in 1840, (Hutchinson's Miss. Dig. 324 *et seq*.,) by which the Banks of that State were forbid " to transfer, by endorsement or otherwise, any note, bill receivable or other evidence of debt;" and which declared, that, " if it shall appear in evidence, upon the trial of any action upon any such note, bill receivable, or other evidence of debt, that the same was transferred, the same shall abate upon the plea of the defendant."

The facts of the case show, that the notes in suit were discounted by the Commercial Bank of Columbus, Mississippi, in 1842, and held and owned by said Bank until 6th April, 1843, when they were transferred by endorsement to the Planters' and

Merchants' Bank of Mobile, in part payment of a debt due from the former to the latter Bank.

The following extracts from the charter of the Commercial Bank of Mississippi, passed in 1836, will show the powers which were conferred on that corporation in relation to the right of selling, transferring or disposing of her property and effects. The second section of the charter (Miss. Acts of 1836, p. 146) declares, that said Bank " shall be able and capable in law to have, purchase, hold, &c. to them, their heirs, successors or *assigns*, lands, tenements, hereditaments, goods, chattels and effects, of what kind, nature, or quality so ever, &c., and the same to grant, alien, sell or dispose of at pleasure," &c. Section third gives the power to discount notes ; and section four, '' to deal in exchanges, foreign and domestic.''

These portions of the charter of the Commercial Bank are not materially variant from the corresponding portions of the charter of the "Planters' Bank" of that State. That charter gave power to the Bank "to have, possess, &c. lands, tenements, hereditaments, goods, chattels and effects of what kind so ever, nature and quality ; and the same to grant, demise, alien, or dispose of, for the good of said Bank.'' It also had the power "to discount notes payable and negotiable on their face at some Bank or Branch Bank, and bills of exchange.''

The two charters may be treated, and indeed have been treated by the courts of Mississippi, as being equivalent in these particulars.—Columbus Bank (use, &c.) v. Thompson *et al.*, 7 Sm. & M. 443.

This being so, we are relieved from the necessity of considering the question of the constitutionality of this statute prohibiting transfers, as a new question. It has been decided, apparently with great consideration, and after labored arguments on both sides, by the Supreme Court of the United States on appeal, that the statute violates the provision of the constitution of the United States. (Art. 1, Sec. 10,) which declares that 'No State shall pass any law impairing the obligation of contracts.' The charter of the Commercial Bank is holden by that court to be a contract between the corporators and the State ; and among the obligations of that contract, the obligation on the part of the State, evinced by the words which have been quoted from the charter, to allow the Bank, if she saw proper, to endorse,

assign, or transfer any notes which she had acquired in the course of her business, is held to exist.—Planters' Bank Miss. v. Sharp *et al.*, 6 Howard U. S. 301.

The Supreme Court of Mississippi, by one decision, seemed inclined to construe the statute of 1840 prohibiting transfers by Banks as only intended to prevent an assignee of a Bank from suing in his own name, and not as intended to render the note actually void after an act of transfer.—Baldwin v. Payne, 3 Sm. & M. 681.

But in a subsequent case, (Planters' Bank v. Sharp, 4 Sm. & M. 23,) the Supreme Court of Mississippi finally decided, that the act of transfer according to the statute made the note void; and that no suit could afterwards be maintained upon it, either by the assignee in his own name, or in the name of the Bank.

The Supreme Court of the United States, 6 Howard, *supra*, also hold this to be the true construction of the Mississippi statute of 1840, and, so holding, decide that it violates the obligation of the contract between the State and the Bank, and is therefore itself violative of the constitutional provision bearing on that point, and for that reason void.

We feel no hesitation in following that court on both the questions, that of construction and that respecting the consequences which follow such construction. The Supreme Court of Mississippi has since acquiesced in that construction.—Grand Gulf R. R. & B. Co. v. The State, 11 Sm. & M. 429.

It results from what has been said, that we find no error in the record, and the judgment below is affirmed.

GIBBONS, J. did not sit in this case.